AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED

# UNITED STATES DISTRICT COURT

U.S. District Court
District of Kansas

for the

DEC 2 3 2015

District of Kansas

Clerk, U.S. District Court
By _____ Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT
WWW.FACEBOOK.COM/PROFILE.PHP?
ID=100003074744541&FREF=TS
SCREEN NAME: KYLIE BEELER THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK AS FURTHER DESCRIBED IN ATTACHMENT A.

)
)
)
)
)
)
)

Case No. 15-M-6292-01-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591 | Sex Trafficking by force, fraud or coercion |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kenneth Heizer SA, DHS, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 23 Dec. 15

_____
*Judge's signature*

City and state: @ Wichita, Kansas

Gwynne E. Birzer, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH

FACEBOOK ACCOUNT
WWW.FACEBOOK.COM/PROFILE.PHP?
ID=100003074744541&FREF=TS
SCREEN NAME: KYLIE BEELER

THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK INC.

Case No. 15-M-6292-01-GEB

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kenneth Heizer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user account that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

1

2.    I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

3.    I am a Special Agent of the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), assigned to the Office of HSI in Wichita, Kansas. I have been so employed since June 2014. From March 2010 to June 2014, I was assigned to the HSI Riverside/San Bernardino, California office. Prior to working for HSI, I was a Deputy Sheriff for Douglas County, Colorado, from July 2008 to September 2009. From March 2007 to July 2008 I worked for Immigration and Customs Enforcement (ICE) as an Immigration Enforcement Agent. Prior to that, I was a police officer in Riverside, Ohio, from August 2006 to March 2007. From 1997 to 2005 I was military policeman in the United States Air Force (USAF). During my employment with HSI, I have participated in investigations of violations of Title 18, United States Code §§ 1591, sex trafficking by force, fraud, or coercion.

4.    As a special agent of HSI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code §§ 1591, sex trafficking by force, fraud, or coercion.

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and law enforcement officers, and witnesses. I have not set forth each and every fact learned during the course

2

of this investigation and this affidavit does not purport to set forth all of my knowledge of the investigation into this matter. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.    Except where otherwise noted, the information set forth in this affidavit has been provided directly or indirectly by Special Agents of HSI, Officers from the Salina Police Department and the I-135/I-70 Drug Task Force (DTF), Officers and Detectives from the Wichita Police Department (WPD) and individuals from other law enforcement agencies. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken with, or whose report I have read and reviewed.

7.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1591, sex trafficking by force, fraud, or coercion have been committed by Crystal ELLYSON, Diantre LEMMIE, and others yet to be identified. There is also probable cause to search the information described in Attachment A for evidence of these crimes.

## PROBABLE CAUSE

8.    On December 14, 2015, SAs Gatrost and Stewart with HSI Kansas City were contacted by a former victim of human trafficking who told that her friend, Phillip Short was contacted by Kylie Beeler. Short told the reporting party that he needed her

3

help in regard to Kylie Beeler who was taken to Wichita, Kansas against her will, was being posted on backpage.com for commercial sex acts and did not want to be there.

9. Backpage.com searches revealed an advertisement under phone number: (785) 201-2382. Advertisements depicted two blond females claiming to share a phone number, and be presently in Wichita, Kansas. The names linked to phone number with advertisements are "lil beezy" and "Diamond". Upon review of the posted photos offering commercial sex acts, "lil beezy" has been identified as Kylie Beeler. On December 15, 2015, a subpoena was served on backpage.com for the advertisements and associated accounts. The advertisements only listed Kylie Beeler on December 13, 2015 and stated that she was new to town.

10. SAs spoke with Short who informed SAs Gatrost and Stewart that Beeler had contacted Short and told him that she was in the hotel room with the "dudes old lady". Short stated that Beeler was supposed to be taken home (possibly that day) but she is still in Wichita, KS.

11. On December 14, 2015, SA Heizer with the HSI Wichita, Kansas office contacted Detective Matt Halton form the Salina I-70/I-135 Drug Task Force (DTF) to request a booking photo of Kylie Beeler. Detective Halton provided a booking photo of Beeler. Based on the booking photo, Facebook photos provided by SA Gatrost, and the backpage.com ad featuring "lil beezy", it was believed that "lil beezy" was Kylie Ranae Beeler.

4

12.    On December 14, 2015 at approximately 1730 hours HSI SAs meet with Detectives from the Wichita Police Department (WDP), VICE Section. Detective R. Baker was assigned to assist. Detective Baker reviewed the booking photo, Facebook photos, and Backpage.com ad associated with Beeler. Detective Baker checked the phone number associated the Backpage.com ad for "lil beezy" in WPD indices. Detective Baker discovered this phone number was associated with a human trafficking complaint reported on December 02, 2015 to the WPD, in case number 15C080402:

**Review of 15C080402**: On December 02, 2015 at approximately 1347 hours WPD Officer Jeffery D Taylor was dispatched to the Best Western Hotel, Room 255, 6815 W. Kellogg, Wichita KS after the staff called 911 to report someone at this location crying and stating their property had been stolen.

Upon arrival Officer Taylor was informed by hotel staff that Olivia A. Garrett had arrived at the Best Western at approximately 0200 hours. Garrett was crying, stated she did not have anywhere to go, and stated someone had stolen her phone. The Best Western staff allowed Garrett to stay in room 225, but were now requesting she leave the hotel.

Officer Taylor met with Garrett who stated she was living in Salina Kansas, but had come to Wichita with a girl named "Sarah", Crystal Ellyson, and Reginald Benoit to "get away from her old life". "Sarah" took Garrett, Ellyson, and Benoit to the Howard Johnson Hotel located at 6575 West Kellogg where they met with another female identified as Payton Fuller. When she arrived at the Howard Johnson Hotel, Garrett learned that Benoit was planning to post her, Ellyson, and Fuller on Backpage.com for the purpose of prostitution. Garrett refused to be involved and left the Howard Johnson. Garrett walked to the Best Western where they gave her a free room for the rest of the night. At approximately 1330 hours Benoit came to Garrett's room at the Best Western. Benoit tried to get Garrett to leave with him. When Garrett refused Benoit took her phone to use for posting ads on Backpage.com, using her assigned phone number of **785-201-2382**.

5

13.    Detective Baker reviewed the backpage.com ad for "lil beezy" and noted the ad stated she was sharing the phone with "Diamond" Detective Baker had previously identified "Diamond" as Crystal Dawn Ellyson. Detective Baker reviewed the backpage.com ad for "Diamond" and also provided HSI SAs with a booking photo of Ellyson. Based on the booking photo, backpage.com ad, and the use of phone number 785-201-2382 approximately 12 days after it was stolen in a previous human trafficking case, agents and Detectives believe that Crystal D. Ellyson mentioned above and "Diamond" are the same person. Based on the information provided by SAs Gatrost and Stewart along with the information provided by Garrett in report 15C083414, agents and Detectives believed Beeler was being trafficked as well.

14.    On December 14, 2015 at approximately 1843 hours Detective Baker began attempts to establish contact with Beeler using the phone number 785-201-2382 posted on backpage.com. Detective Baker was able to get a response back at approximately 1917 hours from someone at that number. Detective Baker began negotiating with the unknown person via text message in an attempt to get Beeler to agree to exchange sex acts for money. While negotiation with the unknown person, Detective Baker noted that they did not understand usual and established terms associated with prostitution. Detective Baker also noted the unknown individual was not familiar with the prices for prostitution currently associated with Wichita Kansas. These facts also indicated to agents and detectives that Beeler had recently been trafficked and was not previously involved in prostitution. This fact is worth mentioning because the reporting party

6

indicated Beeler had not previously been known to be involved in prostitution. Detective Baker was able to secure an agreement to exchange oral sex for $100 and was told the Beeler was at the Executive Inn located at 5505 West Kellogg in Wichita Kansas.

15.   On December 14, 2015 at approximately 2130 hours WPD and HSI personnel arrived at the Executive Inn, 5505 West Kellogg, Wichita Kansas to attempt to locate Beeler. Detective Baker texted 785-201-2382 to obtain the room number for Beeler. Detective Baker received a call back from this number and female on the phone told him it was room number 108. Detective Baker approached room number 108 and knocked on the door. Beeler answered the door and Detective Baker entered the room. Detective Baker confirmed the agreement of oral sex for one hundred US Dollars and offered a hundred dollar bill of controlled funds to Beeler. Beeler would not take the money so Detective Baker placed the controlled funds on a dresser in the room. Detective Baker gave the arrest signal to the arrest team at that point. At 2139 hours Beeler was taken into custody by the arrest team.

16.   SA Heizer contacted Beeler in the hotel room after she had been apprehended. SA Heizer advised Beeler that law enforcement was there because they believed she was in trouble. At this time Beeler was not advised of her Miranda rights because she was not being asked incriminating questions. Agents believed that she was a victim and were trying to determine if she was injured or needed assistance. Beeler stated she was not a victim of human trafficking and that law enforcements presence at the hotel was not helping her. Based on my training and experience, and from speaking with other

7

law enforcement officers about human trafficking cases I know that human trafficking victims are often threatened with violence by their traffickers. This causes trafficking victims to lie to law enforcement personnel about their status as a victim. While SA Heizer was speaking to Beeler about her possible status as victim it was also unknown to officers and agents that Ellyson was hiding nearby under a stairway. Ellyson was later found hiding under a stairway located near room number 108. When Ellyson was found she was with a male subject later identified as Diantre Lemmie. Knowing that Ellyson and Lemmie were hiding nearby and knowing that she could also be incarcerated with Ellyson and Lemmie if she was arrested could also cause Beeler to lie about her status as a victim.

17.    After Ellyson was apprehended she was given her Miranda rights by Detective Baker. During questioning Ellyson stated that she believed she had been the one texting Detective Baker because Beeler was in the shower. Ellyson was taken into the hotel room and asked to identify her property. Ellyson identified some paper work and some methamphetamine as her property. Officers had previously spoken to hotel management. Management stated the room was rented in the name of Jason Buster, but Ellyson had paid $100 in cash for the room. Ellyson stated she had paid for a day, but not that day. Ellyson was asked about the ads on backpage.com featuring her as "Diamond". Ellyson stated that she only posted ads as an escort, but admitted that she did not have a valid escort license. When asked about her phone Ellyson stated the phone belonged to the mother of her brother's child, and admitted the phone was stolen. It is believed this is

the phone stolen from Olivia Garret described above. When officers looked at the phone it appeared someone had performed a factory reset to erase the data.

18.    On December 15, 2015, SAs Gatrost and Stewart met with the reporting party to get additional information. A Facebook message was shown to SAs which was forwarded by Short to the reporting party and had originated from Kylie Beeler. The forwarded message stated: "… still homeless, Hanging with real gang niggas. I'm in Wichita rn cuz I was basically tricked thinking I was getting a ride somewhere in Salina… Told I got a sell my pussy .. Got put on backpage. . and they won't take me back… I have a warrant for my arrest since the 1st … Never get to see Andi … ☹" Both the reporting party and Short continued talking to Kylie Beeler on Facebook messenger to attempt to figure out how to rescue her; the reporting party began to have fears that someone else had taken Kylie Beeler's phone from and was writing messages for her because she received messages indicating that Beeler had overreacted and not to worry about her.

19.    Kylie Beeler has one Facebook account that has been located WWW.FACEBOOK.COM/PROFILE.PHP?ID=100003074744541&FREF=TS     and screen name: KYLIE BEELER. On or about December 14, 2015, Kylie Beeler used this account to send a message to a friend Phillip Short stating that she had been tricked into being taken to Wichita, Kansas and was being forced to prostitute and being advertised on backpage.com. On or about December 14, 2015, a preservation letter was sent to Facebook to prevent changes to be made to that account and content.

9

20.     Agents and officers have identified and confirmed this account by viewing the photos and friends list associated with these accounts.  The information that will be obtained from this request will be relevant to the ongoing criminal investigation into a violation of Title 18 U.S.C. § 1591, sex trafficking by force, fraud, or coercion.  It will assist investigators in obtaining vital information posted on the account or sent via messenger by Kylie Beeler or others accessing her account relating to her victimization in violation of 18 U.S.C. § 1591, sex trafficking by force, fraud, or coercion.

## BACKGROUND ON FACEBOOK

21.     Based upon my training and experience, and the knowledge of other law enforcement officers involved in this investigation, I know that:

22.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

23.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers,

screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

24.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

26.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates

about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

27.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

28.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles

12

of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

29.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

30.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

31.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

32.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

33.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

34.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

35.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

36.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

14

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

38. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

39. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and

15

prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the

16

Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

41.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

42.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

43.     Based on the forgoing, I request that the Court issue the proposed search warrant.

44.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a District court of the United States that

– has jurisdiction over the offense being investigated." Facebook "is in California a district in which the provider is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Kenneth Heizer
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on _23rd day of December_, 2015

The Honorable Gwynne E. Birzer
United States Magistrate Judge
District of Kansas

18

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook account:

WWW.FACEBOOK.COM/PROFILE.PHP?ID=100003074744541&FREF=TS       and

screen name: KYLIE BEELER that is stored at premises owned, maintained, controlled,

or operated by Facebook Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

   (a)    All contact and personal identifying information, including for Facebook account(s):

   WWW.FACEBOOK.COM/PROFILE.PHP?ID=100003074744541&FREF =TS and screen name: KYLIE BEELER:   full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

   (b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

   (c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

1

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1591, sex trafficking by force, fraud, or coercion have been committed by Crystal ELLYSON, Diantre LEMMIE, and others yet to be identified since December 1, 2015 (note all information being sought is limited for dates between December 1, 2015 until present with the exception of (a) below which is sought to demonstrate the pattern and practice of engaging in commercial sex acts for profit), including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)     Information relating to commercial sex acts, voluntary and involuntary, from June 1, 2015 to present to establish pattern and practice.

3

(b)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e)     The identity of the person(s) who communicated with the user ID about matters relating to describe relevant offense conduct, including records that help reveal their whereabouts and previous locations at specific dates and time.